UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRANDON LEE JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> RON NEAL *et al.*, <br><br> Defendants. | CAUSE NO. 3:23-CV-91-DRL-MGG |

OPINION AND ORDER

Brandon Lee Johnson, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983 against fifteen defendants seeking monetary damages for allegedly subjecting him to unconstitutional conditions of confinement. He is suing Warden Ron Neal, Lieutenant Winn, Assistant Warden Mark Newkirk, Captain Itodo, Captain Dustain, Lieutenant Gordon, Sergeant Larry Haskell, Sergeant Brandon Stovall, Officer McCoy, Counselor Gram, Capt. Reeves, Counselor Lott, Counselor Todd Marsh, Counselor Sudia, and Aramark Supervisor Wayne Peeples. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (citations and quotations omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (when inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Mr. Johnson, who is housed at Indiana State Prison, alleges that, on September 29, 2021, he was moved to cell 534-East in C-Cell House where there was blood on the floors,

2

sink, toilet, and walls.¹ ECF 1 at 7. He reported the condition of the cell to Lieutenant Winn and another custody officer. *Id*. However, because nothing was done to immediately improve the condition of his cell, three days later Mr. Johnson discussed the situation with another custody officer. *Id*. Shortly thereafter, Captain Dustain asked custody staff to inspect Mr. Johnson's cell. *Id*. at 8. After the inspection, biohazard staff arrived at Mr. Johnson's cell and began to clean it. *Id*. Mr. Johnson asserts the biohazard staff indicated his cell was unsanitary and he should not be housed in the cell until it was painted. *Id*. He asked Lieutenant Winn if she could send a painter and she advised him that he would need to fill out a request slip because the cells that were in the worst condition had priority. *Id*.

Though Mr. Johnson asserts that the actions of Captain Dustain and Lieutenant Winn amount to deliberate indifference, he has not stated a claim against Captain Dustain. Once Captain Dustain learned about the condition of Mr. Johnson's cell, he directed custody staff to inspect the cell, and after the inspection, biohazard staff cleaned it. With respect to Lieutenant Winn, Mr. Johnson has stated a claim against her because

---

¹ In his complaint, Mr. Johnson first alleges that, in January 2021, he was subjected to unsanitary conditions, when a pipe burst causing toilets to overflow on ranges 100 West to 500 West. ECF 1 at 6. He contends Lieutenant Winn knew the toilets were overflowing with water from the top floor of the range flooding onto the lower floors of the range. *Id*. Mr. Johnson asserts Lieutenant Winn pushed a cart around the range containing holiday food trays while toilet water dripped onto the trays and instructed him to pass out the trays. *Id*. Lieutenant Winn later gave him a squeegee and ordered him to push the water off the range. *Id*. However, Mr. Johnson has already sued Lieutenant Winn based on these exact same allegations. *See Johnson v. Haskell*, 3:21-cv-517-DRL-MGG (N.D. Ind. filed July 19, 2021). It is malicious to sue the same defendant for the same event in two cases. *See Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (suit is "malicious" for purposes of Section 1915A if it is intended to harass the defendant or is otherwise abusive of the judicial process).

3

she knew he was housed in a cell for three days where there was blood on the floors, sink, toilet, and walls. Therefore, giving Mr. Johnson the benefit of the inferences to which he is entitled at this stage of the proceedings, he has stated a claim against Lieutenant Winn for knowingly leaving him in a cell contaminated with blood for at least three days beginning on September 29, 2021, in violation of the Eighth Amendment.

Mr. Johnson next alleges that, on March 7, 2022, a toilet in cell 532-East continuously flushed and overflowed. ECF 1 at 8. He and other inmates yelled to get the attention of custody officers. *Id*. An officer came onto the range and told them to stop yelling because Lieutenant Winn was aware of the situation. *Id*. at 8-9. Mr. Johnson asserts that five ranges and 25 cells ended up being flooded. *Id*. at 9. He states that when he went downstairs to range 100 East, he saw Lieutenant Winn mopping and pushing a mop bucket. *Id*. Mr. Johnson asked Lieutenant Winn for cleaning chemicals because his floor, towels, sheets, and blankets were covered in toilet water, but she ignored him. *Id*. He then helped remove toilet water from his cell and the range until count time at 5:30 p.m. *Id*. Mr. Johnson contends that Lieutenant Winn asked the maintenance staff to fix the toilet in cell 532-East that day, but only after the inmates in the back half of the cellhouse went into an uproar. *Id*. Mr. Johnson's allegations do not rise to the level of deliberate indifference because Lieutenant Winn contacted maintenance staff to have the toilet fixed. Furthermore, the court cannot plausibly infer that Lieutenant Winn's refusal to provide cleaning supplies while she was actively mopping up toilet water amounts to deliberate indifference. Therefore, he may not proceed against her.

In September 2022, Mr. Johnson asserts Lieutenant Winn began to "try and clean" in C-Cell House. ECF 1 at 10. He asserts the cleaning methods used by the workers were careless, hazardous, and potentially created health problems. *Id*. For example, Mr. Johnson says the workers cleaned ceiling vents using a push broom, which caused dust to fall six stories. *Id*. Mr. Johnson avers this method of cleaning caused bird feces, feathers, dead mice, and other unknown debris to mix into the air in C-Cell House. *Id*. Because wall fans also blew the debris around, Mr. Johnson asked Lieutenant Winn if she could turn the fans off during the cleaning process. *Id*. He does not remember her response, but asserts the fans were not turned off. *Id*.

Though Mr. Johnson asserts Lieutenant Winn was responsible for the workers' unsanitary cleaning methods, he has not stated a claim against her. "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Supervisory staff can be held liable for a constitutional violation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019). Here, Mr. Johnson hasn't alleged facts from which it can be plausibly inferred that Lieutenant Winn facilitated, approved, condoned, or turned a blind eye toward the alleged unsanitary cleaning methods or unsanitary conditions. He may not proceed against her.

On October 7, 2022, C-Cell House was placed on lockdown. ECF 1 at 13. Because of the lockdown, range 500 East was not swept or mopped for ten days. *Id*. Mr. Johnson

5

also asserts the food cart on the range was covered in what looked like mud and was used to collect trash. *Id*. Though he asserts that Lieutenant Winn, Captain Itodo, and Assistant Warden Newkirk were responsible for these conditions, he does not describe his interactions with any of these defendants. Therefore, his allegations are too vague to state a claim.

Mr. Johnson next asserts that, on November 2, 2022, the shower on range 100 East was being repaired or under construction. ECF 1 at 12. He says workers appeared to be sandblasting the shower area. *Id*. Mr. Johnson had a 7:00 a.m. pass and had difficulty breathing because there was smoke in the air and the fans were turned on. *Id*. Given the situation, he asked a counselor for a grievance form, but she told him "you can't grieve this" and "to put a mask on." *Id*. Mr. Johnson told the counselor the dust would end up on his floor and in his food, hair, and eyes. *Id*. He sought medical treatment because he began to have chest pains. *Id*. Mr. Johnson has provided no indication which of the four counselors he has named as defendants that he is suing here. He has not stated a claim.

On December 8, 2022, the shower on range 100 East was once again being repaired and sandblasted. ECF 1 at 12. Mr. Johnson asserts the sandblasting caused dust and debris to fill his cell. *Id*. Because he has provided no indication of which of the fifteen defendants he believes was responsible for this unsanitary condition, he cannot proceed on these allegations.

Mr. Johnson also alleges that from December 28, 2022 to January 8, 2023, the shower on range 100 East was coated with a strong chemical agent, which caused him to have headaches, chest pain, and breathing difficulties because fans blew the fumes into

6

his cell ECF 1 at 12. He once again has not identified which defendant or defendants he believes was responsible for this condition.

Next, Mr. Johnson asserts that for two years or longer, he has been complaining of parasites crawling throughout his body because of the prison's unsanitary conditions. ECF 1 at 13. The parasites have caused him to have chest and stomach pain, headaches, and breathing problems. *Id*. Mr. Johnson provides only a very general timeframe of when this occurred and does not identify which defendant or defendants he believes are liable for these conditions.

Mr. Johnson further contends that he filed a number of grievances challenging the unsanitary conditions, including the way in which prison staff prepare and serve food. ECF 1 at 13-15. However, none of the issues he has grieved have been resolved. *Id*. Here, he seems to allege that Grievance Specialist Joshua Wallen mishandled the grievance process. *Id*. But Mr. Johnson has not named Grievance Specialist Wallen as a defendant in this case. To the extent he asserts that Assistant Warden Newkirk was also responsible for the grievance process, he does not allege Assistant Warden Newkirk was personally involved in reviewing his grievances. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Furthermore, Mr. Johnson has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). He has not stated claims here.

As a final matter, Mr. Johnson has also sued Warden Ron Neal, Lieutenant Gordon, Sergeant Larry Haskell, Sergeant Brandon Stovall, Officer McCoy, Counselor Gram, Capt. Reeves, Counselor Lott, Counselor Todd Marsh, Counselor Sudia, and Aramark Supervisor Wayne Peeples. However, other than listing them as defendants in the caption of his case, he never mentions them in the body of his complaint. Therefore, he may not proceed against these defendants.

For these reasons, the court:

(1) GRANTS Brandon Lee Johnson leave to proceed against Lieutenant Winn in her individual capacity for compensatory and punitive damages for knowingly leaving him in a cell contaminated with blood for at least three days beginning on September 29, 2021, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Warden Ron Neal, Assistant Warden Mark Newkirk, Captain Itodo, Captain Dustain, Lieutenant Gordon, Sergeant Larry Haskell, Sergeant Brandon Stovall, Officer McCoy, Counselor Gram, Capt. Reeves, Counselor Lott, Counselor Todd Marsh, Counselor Sudia, and Aramark Supervisor Wayne Peeples;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Lieutenant Winn at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

8

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of the defendant, if she does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Lieutenant Winn to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

December 11, 2023                             *s/ Damon R. Leichty*
                                              Judge, United States District Court